

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable C. H. Cavness
State Auditor
Austin, Texas

Dear Sir:

Opinion No. 0-2929
Re: Whether the State is authorized to pay salaries to certain officials under named circumstances.

The facts reflected by the file enclosed with your letters of June 6, 1942, and July 7, 1942, are as follows:

Two officers of the Texas State Employment Service, in December, 1940, and during several months of 1941, accepted employment with a firm of Texas contractors in the capacity of personnel director and assistant personnel director, respectively. Such employment was accepted under the following circumstances:

1. Each accepted such employment during Christmas week in 1940, at which time they were on the payroll of the State of Texas as Assistant State Director and District Supervisor of the Texas State Employment Service, respectively.

2. Beginning January 2, 1941, they were paid by the State of Texas, full time for a period of 16½ days, which represented their annual vacation. During all of that period of time they each continued in the employ of said contractors in said capacities, and each was paid full time by the contractors.

3. Following their vacation period the Director of the Texas State Employment Service assumed to grant each of said officers a "leave without pay," which leave continued for periods of more than thirty days each, during all of which time they continued in their respective employment with said contractors.

4. After returning to work for the Texas State Employment Service each of said officers was paid full time and carried on the payroll of such contractors as a full-time employee for

Honorable C. H. Cavness, Page 2

several weeks, during which time they were also paid full time by the State.

You request our opinion as to whether or not the State was authorized to pay the salary of said officers during any of the said periods of time. At all of the times above referred to the Texas State Employment Service was a division of the Texas Unemployment Compensation Commission, was an agency of the State, and its officers and employees were employees and agents of the State of Texas, by whom they were paid.

The Texas State Employment Service was created by Acts, 1935, 44th Legislature, page 552, Chapter 236, codified as Article 5221a-2, V. A. C. S. Section 3 of said Article reads as follows:

"There is hereby created within the Bureau of Labor Statistics a division to be known as the Texas State Employment Service, responsible for administering a system of public employment offices for the purpose of assisting employers to secure employees, and workers to secure employment. The Commissioner of Labor Statistics is authorized and directed to establish such offices in such parts of the State as he deems necessary and to prescribe rules and regulations not inconsistent with any of the provisions of this Act."

By Acts of 1936, 44th Legislature, Third Called Session, Page 1993, Chapter 482, Section 12, as amended Acts 1937, 45th Legislature, page 12, Chapter 67, Section 4, The Texas State Employment Service was transferred to the Unemployment Compensation Commission as a division thereof. The pertinent part of said Act has been codified as Article 5221b-10, V. A. C. S. Said Article reads in part as follows:

"(a) Texas State Employment Service, as provided for under Act of the Forty-fourth Legislature, Regular Session, Chapter 236, page 552, is hereby transferred to the Commission as a division thereof. The Commission through such division, shall establish and maintain free public employment offices in such number and in such places as may be necessary for the proper administration of this Act, and for purposes of performing such duties, as are within the purview of the Act of Congress entitled 'An Act to provide for the

establishment of a national employment system and
for cooperation with the States in the promotion of
such system and for other purposes,' approved June 6,
1933, (48 Stat. 113; USC, Title 29, Section 49(c) )
as amended.  It shall be the duty of the Commission
to cooperate with any official or agency of the United
States having powers or duties under the provisions of
the said Act of Congress, as amended, and to do and
perform all things necessary to secure to this State
the benefits of the said Act of Congress, as amended,
in the promotion and maintenance of a system of public
employment offices.  The provisions of the said Act of
Congress, as amended, are hereby accepted by this
State in conformity with Section 4 of said Act, and
this State will observe and comply with the require-
ments thereof.  The Texas Unemployment Compensation
Commission is hereby designated and constituted the
agency of this State for the purposes of said Act.  The
Director, other officers and employees of the Texas
State Employment Service shall be appointed by the Com-
mission in accordance with regulations prescribed by
the Director of the United States Employment Service.

"(b)  Financing:  All monies received by this State
under the said Act of Congress, as amended, shall be
paid into the special 'Employment Service Account' in
the Unemployment Compensation Administration Fund, and
said monies are hereby made available to the Texas Un-
employment Compensation Commission to be expended as
provided by this Section and by said Act of Congress,
and any unexpended balance of funds appropriated or
allocated either by the State of Texas or the Federal
Government to the Texas State Employment Service as a
division of the Bureau of Labor Statistics, is hereby,
upon the passage of this Act, transferred to the special
'Employment Service Account' in the Unemployment Com-
pensation Administration Fund.  For the purpose of es-
tablishing and maintaining free public employment of-
fices, the Commission is authorized to enter into agree-
ments with any political subdivision of this State or
with any private, and/or non-profit organization, and
as a part of any such agreement the Commission may ac-
cept monies, services, or quarters as a contribution to
the special 'Employment Service Account.'"

Honorable C. H. Cavness, Page 4

It will be seen that the two employees of the State Employment Service, here under consideration, occupied responsible positions in the discharge of which they were required to exercise discretion and judgment, and, by statute, were required to assist employees in obtaining employment and to assist employers in finding employees, in the operation of a "free public employment office." The very names of the positions held by such employees indicate that they were, in a measure, required to perform the identical service, in their second employment, which the statute required them to perform for the State. For the performance of that service they were being paid by the State, while at the same time they were being paid for such employment by a private concern. The record seems to indicate a faithful discharge, by each of said employees, of all the duties owed by them to the State as well as to their private employer.

The statement of facts, however, makes it apparent that the two employments are inconsistent and incompatible. Such employment required the employee to represent the State as its agent on the one hand and the private employer, as his agent, on the other. The interests of said two principals were diverse, and in many instances were probably conflicting. Dual agency, under such circumstances, is contrary to public policy and will not be permitted.

We have heretofore held, in our Opinion No. 0-2814, a copy of which is enclosed herewith, that a State employee is not entitled to receive pay for a vacation not taken while he is in the employ of the State. It is equally clear that an employee of the State would not be entitled to receive pay for legal holidays occurring after the severance of his employment with the State. It seems that each of said employees began work for a private employer about December 22, 1940. It is our view that when such employee entered upon his private employment, even though he began such employment during a period denominated the Christmas Holidays, his period of occupation as a State employee was terminated. Such employee was entitled to receive pay from the State of Texas for all services rendered by him to the State up to the date when he terminated his period of service with the State by accepting employment with the private concern. He was entitled to receive no further sum from the State, and the State was authorized to pay no further sum on account of his employment until after the employee had been released by said private employer.

Honorable C. H. Cavness, Page 5

The action of said employees in accepting employment of a private employer is repugnant to the idea of continued employment by the State. It required them to be agents of the State on the one hand and of the private employer, on the other, under circumstances where the interests of the two might easily be in conflict. Such a contract tends to corruption and is against public policy. "The tendency of such an agreement, and not the result or motive, is declared to be the test of its legality." Amarillo Oil Company vs. Ranch Creek Oil & Gas Company, 271 S. W. 145, writ of error dismissed.

As said in the case of Scott vs. Kelso, 62 Civ. App. 163, 130 S. W. 610:

"In all cases the principal is entitled to the best effort and unbiased judgment of his agent, and the law, for reasons founded in public policy, forbids the agent's assumption of a relation which affords temptations antagonistic to his duty."

The rule laid down in the case of Scott vs. Kelso is the law as between private parties. Certainly it should not be more relaxed in a case where the State is one of the principals. That the agreement here under consideration is against the public policy of this State is well settled. City of Edinburg vs. Ellis, (Com. of App.) 59 S. W. (2d) 99; Flaniken vs. Fokes, 15 Tex. 180; Wills vs. Abbey, 27 Tex. 203; DeLeon vs. White, 9 Tex. 598. The same rule is announced in United States vs. Carter, 217 U. S. 286. The following pertinent quotation is taken from the California case of Stockton Plumbing & Supply Company vs. Wheeler, 229 P. 1020:

"The principle upon which public officers are denied the right to make contracts in their official capacity with themselves or to be or become interested in contracts thus made is evolved from the self-evident truth, as trite and impregnable as the law of gravitation, that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service he performs. The principle has always been one of the essential attributes of every rational system of positive law, even reaching to private contractual transactions, whereby there are created between individuals trusts or fiduciary relations. The voice

592

of divinity, speaking from within the sublimest incarnation known to all history, proclaimed and emphasized the maxim nearly two thousand years ago on occasions of infinite sacredness."

We conclude that since it is contrary to the public policy of this State that its agents should, at the same time, represent in the same capacity, other principals of diverse interests, for the stated reason that no man can serve two masters, when employment was accepted by such employees, as agents of the contractors, they ceased to be employees of the State of Texas, and that such employees were not entitled to receive any salary from the State of Texas at any time subsequent to the date of their acceptance of such employment, until they had ceased to be so employed. Accordingly, we hold that such dual employment was highly improper and that it should never have been permitted, nor should any compensation have been paid to said employees by the State, during any of the periods of time about which you inquire, if the facts were known to the disbursing officers.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Fowler Roberts*

Fowler Roberts
Assistant

FR:ej

APPROVED AUG 19, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE

BY
CHAIRMAN